# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT
# NEW HAVEN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| ACE BEGONIAS INC., | ) | CASE NO. 19-31430 (AMN) |
| | ) | |
| DEBTOR. | ) | |
| | ) | |
| | ) | |
| BONNIE C. MANGAN, Chapter 7 Trustee for ACE BEGONIAS INC. | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. _____ |
| | ) | |
| KABBAGE, INC.; and CELTIC BANK, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Bonnie C. Mangan, Chapter 7 Trustee (the "Trustee") of Ace Begonias Inc. (the "Debtor"), in support of this complaint ("Complaint") to avoid and recover transfers of the Debtor's assets, hereby alleges:

## PRELIMINARY STATEMENT

This is an action brought by the Trustee to avoid and recover numerous transfers of the Debtor's assets that resulted from an unscrupulous scheme to evade state-imposed limits on the amount of interest that can be charged on business loans. Through an illegal "rent-a-bank" scheme, the Defendants, Kabbage, Inc. ("Kabbage") and Celtic Bank ("Celtic") (together, the "Defendants") sought to profit off the financial distress of small businesses like the Debtor. Under this scheme, Kabbage originated, underwrote, securitized and funded loans to the Debtor

at excessive interest rates – as high as 42%. Then, in an effort to evade Connecticut's twelve percent (12%) statutory cap on interest, Celtic would purport to be the lender (at least on paper) in an effort to claim federal preemption as a Member FDIC Bank. Moveover, the loan documents would seek to impose a Utah choice of law provision, as Utah has no maximum interest rate of commercial loans.

Except for the use of its name, however, Celtic played no role in the transaction. Similarly, the state of Utah had absolutely no connection to the transaction which could warrant the application of its law. Kabbage was the true lender. It was Kabbage, a Georgia company, that loaned the money to the Debtor in Connecticut. Then, it was Kabbage who withdrew payments from the Debtor's bank accounts at Webster Bank – again in Connecticut.

The Defendants' scheme drained the Debtor's assets until it could no longer operate, leaving less aggressive creditors holding the bag. The Trustee now seeks to set aside those transfers to Kabbage, as Connecticut law prohibited Kabbage from collecting payments on its usurious loans.

## JURISDICTION AND VENUE

1.   On August 30, 2019, (the "Petition Date") the Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code.

2.   This Complaint initiates an adversary proceeding pursuant to §§ 105, 502(d), 510, 544, 546, 547, 548, 550 and 551 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. ("Bankruptcy Code"), and Federal Rule of Bankruptcy Procedure 7001(1).

3.   This Court has jurisdiction, under 28 U.S.C. §§ 157 and 1334(b), of the subject matter of this proceeding because the claims asserted herein arise under Chapter 7 of the Bankruptcy Code and are related to a case pending under the Bankruptcy Code in the United

States Bankruptcy Court for the District of Connecticut, New Haven Division (the "Bankruptcy Court").

4. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A),(B),(E),(F),(H), and (O).

5. Pursuant to 28 U.S.C. §§ 1391 and 1409(a), venue of this adversary proceeding in the Bankruptcy Court is proper because the Debtor's case is pending in this district and division.

## PARTIES

6. The Trustee is the duly appointed Chapter 7 Trustee in this Chapter 7 case.

7. Defendant, Kabbage is a limited liability company duly organized and existing under the laws of the State of Georgia, with its principal place of business located at 925B Peachtree Street NE, Suite 1688, Atlanta, GA 30309.

8. Defendant, Celtic Bank is an industrial bank chartered by the State of Utah and existing under the laws of the State of Utah, with its principal place of business located at 268 South State Street, Suite 300, Salt Lake City, Utah 84111.

## FACTS COMMON TO ALL COUNTS

9. Kabbage is an online digital technology company which provides funding directly to small businesses and consumers through an automated lending platform.

10. 4. In order to obtain clients for its loans, Kabbage aggressively markets, underwrites and services short-term loans to small businesses in need of quick capital.

11. These loans often substantially exceed the statutory maximum legal interest rate in violation of state usury laws.

12. In an effort to hide—and ostensibly legalize—its illegal activities, Kabbage entered into an illegal "rent-a-bank" scheme with Celtic Bank, a foreign state chartered bank in Utah (a state with no maximum interest rate for commercial loans).

13. The enterprise's sole purpose is to evade the usury laws of states throughout the country, including Connecticut.

14. Under this "rent-a-bank" scheme, Kabbage originates, underwrites, securitizes and funds the loans, and then enters into sham transactions with Celtic Bank, which acts as the lender in name only.

15. Thus, in economic reality, Kabbage markets, underwrites, prices, approves, funds, and collects upon 100% of the loans. It also bears 100% risk of loss.

16. In contrast, Celtic Bank owns the receivables on paper *for just two-days*, bears zero risk of loss and literally does not lift a finger to service the loan.

17. From the inception of *every* loan that it originates, Kabbage is contractually obligated to purchase from Celtic Bank 100% of those receivables.

18. Celtic Bank retains no ownership or monetary interest in the receivables, and therefore, it has absolutely no economic risk of loss due to a borrower's non-payment or subsequent default.

19. Celtic Bank retains no ownership or monetary interest in the receivables, and therefore, it has absolutely no economic risk of loss due to a borrower's non-payment or subsequent default.

20. Put another way, Celtic Bank rents its charter to Kabbage in exchange for a commission on loans originated and funded by Kabbage but nominally made under Celtic's name for the purpose of evading state usury laws.

21. In a January 22, 2019 letter to the FDIC, *ten state attorneys general – including Connecticut's Attorney General William Tong,* decried rent-a-bank schemes that seek to evade their state usury laws.

22. In addition to charging unlawful interest rates, the scheme is designed to trap small businesses in a never-ending cycle of debt.

23. In the instant case, the Debtor took at least thirteen (13) loans from Kabbage that each of which charged interest well in excess of Connecticut's twelve percent (12%) limit, including, but not limited to (the "Usurious Loans"):

| Loan Date | Loan Amount | Term |
|---|---|---|
| 9/13/2016 | $ 18,000.00 | 6 Months |
| 9/21/2016 | $ 18,000.00 | 6 Months |
| 10/3/2016 | $ 15,000.00 | 6 Months |
| 10/10/2016 | $ 7,300.00 | 6 Months |
| 11/11/2016 | $ 9,400.00 | 6 Months |
| 1/3/2017 | $ 10,200.00 | 6 Months |
| 1/25/2017 | $ 11,100.00 | 6 Months |
| 2/10/2017 | $ 13,400.00 | 6 Months |
| 3/13/2017 | $ 16,700.00 | 6 Months |
| 4/7/2017 | $ 17,900.00 | 6 Months |
| 7/10/2017 | $ 18,600.00 | 6 Months |
| 8/7/2017 | $ 13,200.00 | 6 Months |
| 9/7/2017 | $ 11,100.00 | 6 Months |
| **TOTAL** | **$ 179,900.00** | |

24. Each of the Usurious Loans charged a "monthly fee of 3.5%" during the first two months, which is the equivalent of 42% interest per year. In the following months, Kabbage charged 1% per month on the outstanding balance.

25. Pursuant to Conn. Gen. Stat. Sec. 37-4 et seq., the Usurious Loans are void and Kabbage was prohibited from taking action to collect on those loans.

26. Given that the loans were void and uncollectable, the Debtor was not obligated to repay the loans and therefore did not receive reasonable equivalent consideration in exchange for any payment toward the loans.

### COUNT I
### CONSTRUCTIVE FRAUDULENT TRANSFER
### 11 U.S.C. §§ 548(a)(1)(B), 550 AND 551

27. The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

28. The Debtor made the following transfers to Kabbage within two years of the Petition Date (the "2-Year Transfers"):

| Date | Type | Amount |
|---|---|---|
| 9/5/17 | Payment | $ 12,525.68 |
| 10/2/17 | Payment | $ 500.00 |
| 10/12/17 | Payment | $ 13,799.10 |
| 11/2/17 | Payment | $ 7,956.50 |
| 12/18/17 | Payment | $ 11,531.67 |
| 10/31/16 | Payment | $ 11,757.17 |
| 1/26/18 | Payment | $ 300.00 |
| 1/31/18 | Payment | $ 400.00 |
| 2/6/18 | Payment | $ 500.00 |
| 2/14/18 | Payment | $ 500.00 |
| 3/1/18 | Payment | $ 2,473.26 |
| 4/2/18 | Payment | $ 3,473.26 |
| 5/3/18 | Returned - ISF | $ (3,473.26) |
| 5/2/18 | Payment | $ 3,473.26 |
| 5/14/18 | Payment | $ 1,736.63 |
| 5/23/18 | Payment | $ 1,763.63 |
| 6/1/18 | Payment | $ 3,473.26 |
| 7/3/18 | Returned - ISF | $ (3,473.26) |
| 7/2/18 | Payment | $ 3,473.26 |
| 7/10/18 | Payment | $ 3,473.26 |
| 8/1/18 | Payment | $ 3,473.26 |
| 9/4/18 | Payment | $ 3,473.26 |
| 10/15/18 | Payment | $ 500.00 |
| 10/22/18 | Payment | $ 200.00 |
| 10/26/18 | Payment | $ 200.00 |
| 11/2/18 | Payment | $ 200.00 |

|  |  |  |
|---|---|---|
| 11/5/18 | Returned - ISF | $ (200.00) |
| 11/13/18 | Payment | $ 2,373.26 |
| 11/14/18 | Returned - ISF | $ (2,373.26) |
| 11/20/18 | Payment | $ 300.00 |
| 11/21/18 | Returned - ISF | $ (300.00) |
|  |  | **$ 84,009.94** |

29. The 2-Year Transfers were made on or within two (2) years before the Petition Date.

30. The Debtor received less than a reasonably equivalent value in exchange for the 2-Year Transfers.

31. At the time of the 2-Year Transfers, the Debtor was insolvent, or became insolvent as a result of the 2-Year Transfers.

32. At the time of the 2-Year Transfers, the Debtor was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital.

33. At the time of the 2-Year Transfers, the Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

34. The 2-Year Transfers constitute constructively fraudulent transfers avoidable by the Trustee pursuant to sections 548(a)(1)(B), 550 and 551 of the Bankruptcy Code and are recoverable from the Defendant pursuant to section 550(a) of the Bankruptcy Code.

35. As a result of the foregoing, pursuant to sections 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Fraudulent Transfers; (b) directing that the 2-Year Transfers be set aside; and (c) recovering the 2-Year Transfers, or the value of the 2-Year Transfers from the Defendant for the benefit of the Debtor's Estate.

## COUNT II
## CUFTA CONSTRUCTIVE FRAUDULENT TRANFER
## CONN. GEN. STAT. §§ 52-552e(a)(2) AND 52-552f(a)

36. The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

37. The Debtor made the following transfers to the Defendant within four years of the Petition Date (the "4-Year Transfers"):

| Date | Type | Amount |
|---|---|---|
| 12/1/16 | Payment | $ 11,757.17 |
| 12/31/16 | Payment | $ 12,195.34 |
| 2/1/17 | Payment | $ 14,252.34 |
| 3/6/17 | Payment | $ 18,958.18 |
| 4/3/17 | Payment | $ 18,703.16 |
| 5/15/17 | Payment | $ 5,000.00 |
| 5/24/17 | Payment | $ 5,000.00 |
| 6/1/17 | Payment | $ 9,000.00 |
| 6/9/17 | Payment | $ 5,000.00 |
| 6/14/17 | Payment | $ 5,637.36 |
| 7/3/17 | Payment | $ 12,343.02 |
| 8/1/17 | Payment | $ 14,191.98 |
| 9/5/17 | Payment | $ 12,525.68 |
| 10/2/17 | Payment | $ 500.00 |
| 10/12/17 | Payment | $ 13,799.10 |
| 11/2/17 | Payment | $ 7,956.50 |
| 12/18/17 | Payment | $ 11,531.67 |
| 10/31/16 | Payment | $ 11,757.17 |
| 1/26/18 | Payment | $ 300.00 |
| 1/31/18 | Payment | $ 400.00 |
| 2/6/18 | Payment | $ 500.00 |
| 2/14/18 | Payment | $ 500.00 |
| 3/1/18 | Payment | $ 2,473.26 |
| 4/2/18 | Payment | $ 3,473.26 |
| 5/3/18 | Returned - ISF | $ (3,473.26) |
| 5/2/18 | Payment | $ 3,473.26 |
| 5/14/18 | Payment | $ 1,736.63 |
| 5/23/18 | Payment | $ 1,763.63 |
| 6/1/18 | Payment | $ 3,473.26 |
| 7/3/18 | Returned - ISF | $ (3,473.26) |
| 7/2/18 | Payment | $ 3,473.26 |

| Date | Type | Amount |
|---|---|---|
| 7/10/18 | Payment | $ 3,473.26 |
| 8/1/18 | Payment | $ 3,473.26 |
| 9/4/18 | Payment | $ 3,473.26 |
| 10/15/18 | Payment | $ 500.00 |
| 10/22/18 | Payment | $ 200.00 |
| 10/26/18 | Payment | $ 200.00 |
| 11/2/18 | Payment | $ 200.00 |
| 11/5/18 | Returned - ISF | $ (200.00) |
| 11/13/18 | Payment | $ 2,373.26 |
| 11/14/18 | Returned - ISF | $ (2,373.26) |
| 11/20/18 | Payment | $ 300.00 |
| 11/21/18 | Returned - ISF | $ (300.00) |
| | **TOTAL:** | **$ 216,048.49** |

38. The Debtor did not receive a reasonably equivalent value in exchange for the 4-Year Transfers.

39. The 4-Year Transfers were effectuated when: (a) the Debtor was engaged, or was about to engage, in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; and/or (b) the Debtor intended to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due; and/or (c) the Debtor was insolvent or the Debtor became insolvent as a result of the 4-Year Transfers.

40. The 4-Year Transfers constitute fraudulent transfers within the meaning of, and in violation of, the Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §§ 52-552e(a)(2) and/or 52-552f(a).

41. As a direct and proximate result of the 4-Year Transfers, the Debtor, its Estate and its creditors have been caused to suffer money damages.

42. The Trustee, on behalf of the Debtor's Estate, is entitled to avoid the 4-Year Transfers and recover said payments or their value pursuant to 11 U.S.C. §§ 550 and 551 and state law.

## COUNT III
## UNJUST ENRICHMNET

43. The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

44. The Defendant received a benefit from the 2-Year Transfers and the 4-Year Transfers (together the "Fraudulent Transfers") for which it unjustly did not pay.

45. The Defendant's receipt of such benefit was to the detriment of the Debtor and the Estate.

46. It is contrary to equity and good conscience for the Defendant to retain such benefit.

47. As a result, the Estate has suffered damages.

## COUNT IV
## Violation of the Connecticut Unfair Trade Practices Act

48. The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

49. The foregoing acts and practices were done in the conduct of the Defendants' primary trade or commerce.

50. The foregoing acts and practices constitutes unfair and deceptive acts or practices in violation of CUTPA, C.G.S. § 42-110b(a).

51. At all times relevant hereto, the conduct of the Defendants offended public policy; was immoral, oppressive, unethical and unscrupulous; and/or caused substantial injury to consumers, competitors and other business persons.

1. The Defendants' conduct was carried out in an intentional and wanton violation of the Debtor's rights, or was done with reckless indifference to those rights.

2. As a result of the Defendants' unfair and/or deceptive acts and practices, the Estate has suffered ascertainable loss and substantial money damages.

**STATEMENT CONCERNING ENTRY OF FINAL ORDERS OR JUDGMENT**

Pursuant to Fed. R. Bankr. P. 7008, Bonnie C. Mangan, Chapter 7 Trustee of Integrity Graphics, Inc., hereby consents to entry of final orders or judgment by the Bankruptcy Court.

**WHEREFORE**, the Trustee, Bonnie C. Mangan, respectfully requests that the Court enter judgment in favor of the Trustee and against the Defendants as follows:

1. Pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550 AND 551 and the CUFTA: (a) avoidance of all transfers set forth above; (b) an order directing that the transfers set forth above be set aside; and (c) recovery of the transfers set forth above, or the value thereof for the benefit of the Estate of the Debtor;

2. Disallowance of any claims held by the Defendant and/or its assignees against the Debtor and/or the Estate until the Defendant and/or its assignees satisfy the judgment;

3. Damages;

4. Punitive damages pursuant to C.G.S. § 42-110g(a) and the common law;

5. Imposition of a constructive trust in favor of the Estate over the Premises and the Assets and the respective proceeds of each; and

6. Such other and further relief as this Court deems just and equitable.

Dated at Trumbull, Connecticut on this 30th day of August 2021.

                                                BONNIE C. MANGAN,
                                                CHAPTER 7 TRUSTEE OF
                                                ACE BEGONIAS INC.

By: /s/ David C. Shufrin
      David C. Shufrin, Esq. [ct29230]
      SHUFRIN LAW GROUP, LLC
      21 Frelma Drive
      Trumbull, CT 06611
      Tel: 203-307-5001
      David@shufrinlaw.com